Judgment rendered February 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,428-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IN RE: B&B GROUP, LLC, AND GARY BROOKS

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 625,354

Honorable Brady D. O'Callaghan, Judge

* * * * *

| | |
|---|---|
| MARIONEAUX & WILLIAMS, LLC<br>By: Wade T. Visconte | Counsel for Appellant,<br>Gary Brooks |
| WIENER, WEISS & MADISON, APC<br>By: Reid A. Jones | Counsel for Appellee,<br>John Pat Bullock |

* * * * *

Before STONE, COX, and STEPHENS, JJ.

**COX, J.**

This civil appeal arises out of litigation concerning the dissolution of B&B Group, LLC ("B&B Group"). Defendant, Gary Brooks ("Brooks"), appeals the trial court's judgment in favor of John Pat Bullock ("Bullock"), which granted Bullock $8,738.68 in attorney fees and costs, and disbursed the share of funds from the sale of B&B Group's property as follows: $53,059.57 to Brooks and $102,085.25 to Bullock.

## FACTS

On June 15, 2015, Bullock and Brooks formed B&B Group. Bullock and Brooks were the sole members, each sharing a 50% ownership interest in the limited liability company. No partnership or operating agreement existed and B&B Group's sole asset was a commercial strip of property ("the property") located on East 70th Street, in Shreveport, Louisiana. On August 12, 2020, Bullock filed a petition for dissolution of the company, and among several other claims, alleged that Brooks misused company funds, breached his fiduciary duty, and was guilty of mismanagement. Brooks then filed several exceptions in response to the petition. Bullock then filed an amended petition on January 28, 2021, which again sought to dissolve the company, to appoint an accountant to liquidate any assets, and to hold Brooks personally liable for monetary damages.

On April 26, 2021, the parties reached an agreement that was entered as an order from the trial court that: 1) Ben Walker would be selected as realtor to sell the property with a 6% commission; 2) Robert Dean and Spencer Lamb would be appointed as liquidators over B&B Group ("the liquidators"); and 3) both parties would provide necessary records and documentation to the liquidators as needed. The property was assessed at

$400,000 and the parties submitted sealed bids to the trial court, with Bullock winning the bid with an offer of $430,100.[1]  On December 9, 2021, Bullock sought to enforce the rights of B&B Group and filed a petition to void two leases encumbering the property described as:

> 1) Lease Agreement between B&B Group, LLC as Lessor and KOC, Inc. as Lessee dated July 14, 2020 and recorded August 25, 2020 under Registry No. 2801272, Records of Caddo Parish, Louisiana.

> 2) Lease Agreement between B&B Group, LLC as Lessor and KOC, Inc. as Lessee dated August 27, 2020 and recorded September 10, 2020 under Registry No. 2803076, Records of Caddo Parish, Louisiana.

Bullock claimed that because Brooks signed the leases to his company, K-O-C, Inc., ("KOC") d/b/a Fud's Lounge ("Fud's"), there was no majority vote to approve the leases.  In response, Brooks filed a petition on January 3, 2022, alongside several other exceptions, to void the sale of the property to Bullock.

On January 10, 2022, the trial court denied Brooks' exceptions and petition to void the sale and granted Bullock's petition, nullifying the leases. On January 19, 2022, Bullock filed an ex parte "Motion for Order Requiring Gary Brooks to Appear at Closing and Sign Closing Documents."  The motion, in part, provided that "As co-members owning 50% of the interest of B&B [Group], both Brooks and Bullock must sign the deed transferring title to the [p]roperty. . . The closing attorney may also require Brooks to sign additional documents, such as an expired, 2014 Lease."  That same day, the trial court signed an order, requiring Brooks to appear at the January 31,

---

[1] The letter declaring Bullock as the highest bidder and awarding him the right to purchase the property is not in the record before this Court.  However, from the record, it is clear that both parties mutually agreed to submit bids to determine the right to purchase the property, with Bullock submitting the highest bid on September 17, 2021.

2022, closing, and "sign all documents attendant to, and necessary to effectuate, the closing of the sale of the B&B Group, LLC's property to Bullock."

On January 26, 2022, Brooks filed a motion to strike or set aside the January 19, 2022, order. Brooks argued that the January 19 order was "improper because [it] deprive[d] [him] of his fundamental due process right to suspensively appeal this [c]ourt's January 10, 2022, Partial Final Judgment and unlawfully voided the 2014 lease that was reconducted as a matter of law as per La. C.C. art. 2721(2) without the necessary hearing." A hearing on the matter was set for March 14, 2022. The following day, Brooks filed a motion to appeal the January 10, 2022, order. On January 31, 2022, all parties were in attendance and the property was sold from B&B Group to Bullock's company, Tokon Industries and Investments, LLC ("Tokon"). The proceeds of the sale were deposited into the court registry. That same day, the trial court also granted Brooks' motion to appeal the January 10, 2022, order.

On February 9, 2022, Tokon filed a petition to evict KOC, and on February 24, 2022, the petition was granted. Fud's eventually abandoned the property and on March 10, 2022, Brooks requested that the March 14 hearing be removed from the docket because the motion was moot; however, the hearing continued with only Bullock in attendance. The trial court denied Brooks' motion, voided the 2014 lease, and reserved Bullock's right to seek attorneys' fees pursuant to La. R.S. 9:5176(D). On March 23, 2022, Brooks filed a motion for new trial, arguing that the March 14 judgment was improper; the motion was denied on May 24, 2022.

On May 20, 2022, the liquidators submitted their final report concerning the forensic accounting of B&B Group and any claims held by or against Brooks or Bullock. On June 9, 2022, Brooks filed a motion to strike and traverse the liquidators' report; specifically, invoices that totaled $16,404.89, and $36,404.89 in "flagged expenses" to be deducted from Brooks' share of the proceeds from the sale of the property. Brooks also sought to submit additional documentation for consideration. During this time, Tokon filed a motion to intervene to recover past due rent from KOC, court costs from the eviction proceeding, and damages to the property. On August 30, 2022, the liquidators submitted an updated report that was approved by the parties and the trial court.

On September 26, 2022, the trial court denied Tokon's motion to intervene and Brooks' motion to traverse the liquidators' report. Thereafter, Brooks filed a motion to disburse the funds held within the court's registry, and in response, Bullock filed a motion for partial summary judgment seeking attorney fees, as sanctions, as well as an exception of improper use of summary pleadings. Both motions were set for hearing on January 9, 2023. On December 21, 2022, the liquidators then filed a "Motion for Order Winding Up and Other Relief" which calculated the distribution of the remaining assets of the company to each member.

On February 6, 2023, the trial court denied Bullock's exception of improper use of summary pleadings but granted his motion for sanctions. With respect to Brooks' motion to strike the liquidators' report regarding certain "flagged expenses," the trial court denied the motion, finding first that the liquidators made several "good faith requests for supporting documentation before preparing their report," so that Brooks' filing of

4

additional documentation after he filed the motion to strike the liquidators' report was improper.

The trial court noted that "[n]o showing was made nor evidence submitted to show any impossibility of providing the documentation in question within the time limits imposed by the liquidators." Moreover, "no justification was offered for the motion to strike. The court did not find any reasonable basis for this claim based on the record of communications among the parties and liquidators." With respect to the distribution of the funds in the registry, the trial court found that the "report of the liquidators was appropriate, and no argument or evidence was offered that convinced the court of any deficiency therein."

From this ruling, the trial court disbursed the funds held within the court registry, allocating $6,500 to the liquidators, $102,085.25 to Bullock for his one-half of the membership plus sanctions totaling $8,738.68, and $53,059.57 to Brooks for his one-half of the membership. From this, Brooks now appeals, presenting two assignments of error for review.

## DISCUSSION

**Calculation and Distribution of Funds**

By his first assignment of error, Brooks argues that the trial court improperly calculated his share of the funds because it 1) relied on a report from the liquidators not filed in the record; 2) did not allow the parties to traverse the liquidators' January 19, 2023, report; and 3) did not "correctly apply the substantive law" in its distribution of funds.

Specifically, Brooks asserts that the liquidators submitted a report of their calculations of the amount of funds due to each member on January 19, 2023, *after* the January 9, 2023, hearing. He maintains that the trial court

based its final February 7, 2023, ruling on this report without allowing either party to traverse the record and present arguments regarding the report. Brooks argues that because the January 19, 2023, report was not made part of the record, the distribution of funds based on that information should be reversed.

We disagree. This Court notes at the outset that the report was not made part of the appellate record. Generally, the appellate court is a court of record, and may not receive new evidence or consider evidence not in the appellate record. *Sanders v. Rodgers*, 54,916 (La. App. 2 Cir. 12/14/22), 352 So. 3d 162. Moreover, of the evidence properly before this Court, there is no indication that the trial court relied on the January 19, 2023, report as opposed to the report submitted on May 20, 2022. In issuing its ruling on the matter, the trial court, without referencing the specific report from the liquidators, provided, in part, that "the report of the liquidators was appropriate, and no argument or evidence was offered that convinced the court of any deficiency therein."

Accordingly, we find that this portion of Brooks' assignment of error lacks merit.

Brooks further argues that the trial court erred in awarding funds due to each member because it did not correctly apply the substantive law. Brooks maintains that neither the liquidators nor the trial court considered La. R.S. 12:1328 when the "flagged expenses" were deducted from each member's share. According to Brooks, the only sums that could be deducted from his share under La. R.S. 12:1328,[2] were improper distributions that

---

[2] La. R.S. 12:1328 provides, in part:

6

occurred no later than August 14, 2018, two years before this suit was filed.

In this case, the liquidators identified the following "flagged expenses"

attributable to Brooks:

| Item # | Date | Amount | Payee | Check Number | Signer/Initiator | Description |
|---|---|---|---|---|---|---|
| 1 | 3/10/2016 | $ 975.00 | Douglas Crooks | 1017 | Gary Brooks | AC Repair - Suite 1, the partnership should not be paying for an owner/leasee's expenses for repairs unless expressly permitted |
| 2 | 6/27/2016 | $ 140.00 | American Express | N/A | Gary Brooks | Debit memo with American Express listed as the description |
| 3 | 7/26/2016 | $ 290.00 | N/A | N/A | Gary Brooks | Debit memo signed by Gary Brooks |
| 4 | 8/4/2016 | $ 179.00 | Gary Brooks | 1195 | Gary Brooks | Check written by Gary Brooks to Gary Brooks, the memo line is illegible. |
| 5 | 2/24/2017 | $ 500.00 | Gary Brooks | 1219 | Gary Brooks | Check written by Gary Brooks to Gary Brooks, the memo line says P. Taxes |
| 6 | 3/24/2017 | $ 500.00 | TR Visa | 1221 | Gary Brooks | No memo, it appears the payee says TR Visa. |
| 7 | 4/28/2017 | $ 500.00 | Gary Brooks | 1225 | Gary Brooks | Check written by Gary Brooks to Gary Brooks, no memo line |
| 8 | 5/1/2017 | $ 322.00 | American Express | 1227 | Gary Brooks | No memo |
| 9 | 8/31/2017 | $ 394.00 | American Express | 1233 | Gary Brooks | No memo |
| 10 | 8/7/2017 | $ 950.00 | Douglas Crooks | 1158 | Gary Brooks | "AC E. 70th", no suite number specified |
| 11 | 9/18/2017 | $ 6,000.00 | CUB Mellon Co. | 1234 | Gary Brooks | No memo |
| 12 | 9/28/2018 | $ 220.00 | American Express | 1258 | Gary Brooks | No memo |
| 13 | 2/27/2019 | $ 190.00 | N/A | N/A | Gary Brooks | Description only says "Cashier Check" |
| 14 | 3/1/2019 | $ 270.00 | N/A | N/A | Gary Brooks | Description only says "Cashier Check" |
| 15 | 5/8/2019 | $ 5,000.00 | Gary Brooks | 1307 | Gary Brooks | Mgt. Fee |
| 16 | 7/16/2019 | $ 1,800.00 | N/A | N/A | Gary Brooks | Debit memo initiated by Gary Brooks |
| 17 | 10/16/2019 | $ 1,800.00 | N/A | N/A | Gary Brooks | Debit memo initiated by Gary Brooks |
| 18 | 6/11/2020 | $ 2,202.87 | N/A | N/A | Gary Brooks | Debit memo initiated by Gary Brooks |
| 19 | 10/7/2020 | $ 2,250.00 | N/A | N/A | Gary Brooks | Debit memo initiated by Gary Brooks |
| 20 | 10/14/2020 | $ 1,625.00 | N/A | N/A | Gary Brooks | Debit memo initiated by Gary Brooks |
| 21 | 3/23/2021 | $ 5,684.89 | N/A | N/A | Gary Brooks | Debit memo initiated by Gary Brooks |
| 22 | 3/28/2019 | $ 426.00 | American Express | 1325 | Gary Brooks | Transfer |
| 23 | 11/13/2020 | $ 1,886.13 | N/A | N/A | Gary Brooks | Description is somewhat illegible. Appears to say "CC #190966 to Pay Int. & [ ] fee" |
| | Total | $ 34,104.89 | | | | |

Brooks maintains that only items 12 through 23, assuming they were

improper distributions, could be deducted from his share of the funds.

Brooks highlights that Bullock also agreed that Brooks could only be liable

for those distributions from August 2018 forward.

Brooks further argues that although items 12 through 23 fell within

the appropriate timeframe, several of the "flagged expenses" were not

improper distributions that could be deducted from his share. Brooks

---

C. An action to enforce liability under this Section must be brought within two years from the date of which the effect of the distribution is measured under R.S. 12:1327, except that a member or manager held liable under Subsection A of this Section solely because of having voted for or assented to an unlawful distribution may bring an action to enforce his right of contribution under this Section within two years from the date of payment by the member or manager on account of such liability. These time limits shall not be subject to suspension on any ground, nor to interruption except by timely suit.

contends that he had documentation clarifying those remaining expenses,[3] but the liquidators would not submit a revised report to the court in consideration of those documents, and the trial court refused to consider the documents because they were not "timely provided."

Brooks argues that there was no imposed deadline by either stipulation of the parties or by law[4] that would have prevented him from submitting supplemental documentation for review. Brooks asserts that even if a deadline was imposed on the parties, Bullock failed to file a motion to compel production of documents, and the liquidators did not file a complaint with the trial court about a missed deadline. Brooks asserts that the only issue the liquidators drew attention to regarding a delay in issuing the report came from preparing tax returns for B&B Group.[5]

La. R.S. 12:1328 provides, in part:

A. Each member, if management is reserved to the members, or manager, if management is vested in one or more managers pursuant to R.S. 12:1312, who knowingly, or without the exercise of reasonable care and inquiry, votes for or assents to a distribution in violation of the articles of organization, an operating agreement, or R.S. 12:1327 shall be jointly and severally liable to the limited liability company for the amount

---

[3] For example, Brooks asserts that "item 21" was not an improper distribution because the money was used to pay B&B Group's property tax to prevent foreclosure.

[4] Brooks cites La. R.S. 12:1337 for the assertion that the distribution of LLC assets to members does not impose any deadline. Specifically, he argues that under this statute, after all "debts and liabilities" have been accounted for, capital contributions are returned to each member, and the remaining amount is owed "in the proportions in which the members share in distributions."

[5] In an email to all parties involved, the liquidators provided the following information:

I wanted to provide an update on our report for B&B Group, LLC. I understand you are waiting on it and that this is one of the only loose ends to resolve this matter. Obviously[,] the timing with tax deadlines has its impact and is causing some delay but the good news is I have everything I need to complete it. I am nearly through it and will be delivering it very soon to the court.

of the distribution that exceeds the amount that could have been distributed without violating R.S. 12:1327, the articles of organization, or an operating agreement. Each member shall be liable to the limited liability company for the amount which the member received in violation of this Section.

B. Each member or manager liable under Subsection A of this Section for an unlawful distribution shall be entitled to a contribution from each other member or manager who could be held liable under such Subsection.

C. An action to enforce liability under this Section must be brought within two years from the date of which the effect of the distribution is measured under R.S. 12:1327, except that a member or manager held liable under Subsection A of this Section solely because of having voted for or assented to an unlawful distribution may bring an action to enforce his right of contribution under this Section within two years from the date of payment by the member or manager on account of such liability. These time limits shall not be subject to suspension on any ground, nor to interruption except by timely suit.

Here, Bullock filed his amended motion to dissolve B&B Group on January 28, 2021. In his petition, Bullock alleged that Brooks was liable for any monetary damages due to his mismanagement of the company, breach of fiduciary duty, and any other conduct which "demonstrate[d] a greater disregard of the duty of care than gross negligence." Under the provisions of La. R.S. 12:1328, Brooks can only be held liable for any improper distribution of funds from B&B Group for two years from the date this suit was filed.

After parsing the record, it does not appear that such changes in the liquidators' report were made to reflect this change. Accordingly, this matter should be reversed in this limited sense to reflect those changes only. This Court does not agree with Brooks' contention that any remaining "flagged expenses" attributed to him should be reconsidered in light of any supporting documentation not submitted to the liquidators before the report was submitted to the trial court. As discussed in further detail below, this

9

Court finds that Brooks was provided ample time to supply the liquidators with any necessary documents to support his position that the "flagged expenses" attributed to him were improper.

**Attorney Fees and Costs**

By his second assignment of error, Brooks argues that the trial court erred in awarding attorney fees and costs as sanctions. Brooks highlights that the ruling regarding sanctions should be reversed for the following reasons:

First, Brooks argues that the appropriate time to request or award sanctions was when the motion to traverse/strike the liquidators' invoice and report was partially denied, or alternatively, when Bullock opposed the motion to rescind the sale of the property. Brooks maintains that the trial court had the authority to issue sanctions at that time, but did not. Moreover, he argues that because Bullock failed to timely reserve his right to seek sanctions under La. C. C. P. art. 863, the motion for sanctions was untimely and should have been denied.

Second, Brooks argues that no "exceptional circumstances" existed to justify an award for the costs Bullock incurred in opposing the motion to traverse/strike the liquidators' invoices and report. Brooks asserts that his motion to traverse the invoices to determine whether the incurred expenses were reasonable and fair was appropriate because the original invoice was submitted without any adequate description of the charges, dates, itemization of the amount of time billed for each task, or specification as to hourly rate or who performed particular tasks.

Brooks maintains that his motion to traverse the liquidators' invoice was successful because the liquidators provided an updated invoice in

10

response to his motion. From this, he argues that because the motion to traverse/strike the liquidators' invoice and report was partially successful, then it follows that "no exceptional circumstances" existed to justify sanctions on the other portion of his motion to strike the liquidators' report. Accordingly, he contends that the $3,000 awarded in sanctions for this matter was improper.

Finally, Brooks maintains that the award for any expenses Bullock incurred regarding the motion to rescind the sale of the property and the cancellation of the leases was also improper. Specifically, Brooks argues that neither Bullock nor Tokon had standing or legal interest to cancel the 2014 lease. Brooks argues that the "normal course" of business for B&B Group was that either he or Bullock could sign leases without the approval of the other and Bullock was aware that there were leases without both of their signatures.

Brooks further argues that under La. R.S. 12:1329, "individuals cannot assert property claims as members of an LLC where the disputed property interests are the property of the separate legal entity." Brooks asserts that because Bullock conveyed all of his interests to Tokon when he purchased the property on January 31, 2022, Bullock relinquished all rights to enforce any rights because all interests were conveyed to Tokon, who failed to make a written demand to cancel the 2014 lease or file a declaratory judgment following the sale of the property.

In his reply brief, Brooks further maintains that sanctions should not have been awarded against him regarding the motion to rescind the sale of the property. Brooks asserts that under the contract of sale, paragraph 3 provided:

PURCHASER shall have fifteen (15) days from the expiration or earlier termination of the due diligence period to examine title and deliver a copy of PURCHASER'S attorneys opinion to SELLER, setting forth any defects in title and the requirements necessary to perfect same. SELLER, shall have 15 days from delivery of said opinion within which to perfect title and obligates itself to make reasonable efforts to do so at its own expense. If SELLER is unable to perfect title or make same insurable within said time, PURCHASER shall have the option of waiving the defects and accepting title to said property or declaring this contract and agreement null and void, the part payment shall be returned, the SELLER shall be released from his agreement to sell and the PURCHASER shall be released from his agreement to purchase. Failure of either party to comply with the obligations of this paragraph shall constitute a default and shall entitle the other party to specific performance.

Further, the following paragraph of the contract provided that "delivery" of the property would take place no later than November 15, 2021. Brooks maintains that Bullock had 15 days to examine title and set forth any defects for B&B Group to perfect title, but failed to do so. Brooks argues that if there was a cloud on the property's title, Bullock was bound to either void the sale or accept the property subject to the leases, not file a motion to void the leases to clear the cloud on the title. Brooks asserts that because the trial court did not have the authority to extend the deadline of the contract and Bullock did not comply with the details of the contract, sanctions should be reversed.

As noted by the trial court, the relevant provision of law in this case regarding this assignment of error is La. C.C.P. art. 863, which provides:

A. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address.

B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his

12

knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:

> (1) The pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

> (2) Each claim, defense, or other legal assertion in the pleading is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.

> (3) Each allegation or other factual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

> (4) Each denial in the pleading of a factual assertion is warranted by the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

C. If a pleading is not signed, it shall be stricken unless promptly signed after the omission is called to the attention of the pleader.

D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees.

E. A sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction.

F. A sanction authorized in Paragraph D shall not be imposed with respect to an original petition which is filed within sixty days of an applicable prescriptive date and then voluntarily dismissed within ninety days after its filing or on the date of a hearing on the pleading, whichever is earlier.

G. If the court imposes a sanction, it shall describe the conduct determined to constitute a violation of the provisions of this Article and explain the basis for the sanction imposed.

This article is intended to be utilized for exceptional circumstances. *Woods v. Woods,* 43,182 (La. App. 2 Cir. 6/11/08), 987 So. 2d 339, *writ denied,* 08-2256 (La. 11/21/08), 996 So. 2d 1110. It is not to be used simply because the parties disagree as to the correct resolution of a legal matter. *Morris v. City of Minden*, 50,406 (La. App. 2 Cir. 3/2/16), 189 So. 3d 487, *writ denied*, 16-0866 (La. 6/3/16), 192 So. 3d 748.

Further, the slightest justification for the exercise of a legal right precludes sanctions. *Alpine Meadows, L.C. v. Winkler*, 49,490 (La. App. 2 Cir. 12/10/14), 154 So. 3d 747, *writ denied*, 15-0292 (La. 04/24/15), 169 So. 3d 357; *Woods*, *supra*. Once the trial court determines that sanctions are appropriate, it has considerable discretion as to the type and severity of the sanctions imposed. *Alpine Meadows, supra*. Therefore, we review the type and amount of the sanction under the abuse of discretion standard. *Id*.

Here, the trial court determined that sanctions were appropriate regarding the following: 1) Brooks' motion to rescind the sale of the property, and 2) Brooks' motion to strike the liquidators' report. With respect to the motion to rescind the sale of the property, Brooks argues, in part, that sanctions should not have been awarded because Bullock and Tokon lacked standing and legal authority to cancel the leases B&B Group executed with Fud's. However, the trial court did not impose sanctions against Brooks regarding litigation of the leases. Specifically, the trial court provided:

> . . . [T]he court notes that Brooks had a legitimate concern that suspensive appeal rights were at stake. Further, this court perceives the complained of conduct as of such a nature that contemporaneous contempt remedies would have been the appropriate avenue. The court believes that the refusal to execute the cancellation in a timely fashion was problematic but cannot award sanctions because the pleadings filed and signed

14

raised claims fairly subject to controversy and consideration by the court.

Bullock offers an alternative basis for recovering costs and fees under La. R.S. 9:5176(D).  However, as Brooks points out in opposition, the technical requirements of that statute were not fully met, and by using a corporation to acquire the property, Bullock is not the 'owner" as contemplated by the statue.

Brooks further argues sanctions should not have been awarded with respect to the motion to rescind the sale of the property.  However, as the trial court noted, "there appears to be a fundamental gap between the allegations in Brooks' pleadings and the procedural reality."  Brooks argues that the sale should have been voided because Bullock failed to comply with the terms of the contract of sale Bullock drafted and submitted to the court on September 17, 2021.  However, after a thorough review of this record, it is clear that the "contract" Bullock submitted on September 21, 2021, is merely his proposed bid to the trial court to purchase the property.  Bullock is the only party that signed the document, and Brooks made clear he did not agree with several of the terms presented in Bullock's bid.

Although the letter which declared Bullock was the highest bidder and awarded him the right to purchase the property is not in the record, the transcript from the January 10, 2022, hearing is clear that the primary purpose of the sealed bids was merely a vehicle to determine who would obtain the right to purchase the property, which both parties agreed to.  It appears from the hearing that the primary purpose of executing the sealed bids was to prevent both parties from inevitably filing an array of petitions or bids and to quickly and efficiently choose a member to purchase the property.  The trial court indicated that Bullock won the bid and that the

matter would proceed with Bullock maintaining the right to purchase the property.

Importantly, we note that the sealed bid Bullock submitted to the trial court did not actually convey ownership to Bullock, and the actual sale of the property did not occur until January 31, 2022, so that Bullock could not be held liable for the terms of a contract which had not yet occurred. Moreover, the cash sale deed signed on January 31, 2022, did not contain the same terms of agreement presented in Bullock's bid.

Finally, with respect to the sanctions concerning the motion to strike the liquidators' report, Brooks maintains that there was no justification for sanctions regarding the motion to strike the liquidators' report. Brooks maintains that the liquidators' calculations were inappropriate and the liquidators should have considered additional documents in relation to some of the "flagged expenses." Accordingly, the trial court found that Brooks' motion to traverse the invoices was not frivolous, and declined to award the full amount requested for sanctions. Although sanctions were not awarded for the motion to traverse the liquidators' invoices, the same cannot be said of the motion to strike the liquidators' report.

Here, the record reflects that on April 26, 2021, the trial court ordered both Bullock and Brooks to "fully cooperate with the accountant and real estate agent along [with] complying with all requests to produce records and sign any and all necessary documents to list and sell and the commercial property." Thereafter, on August 4, 2021, the liquidators sent a letter to both parties to provide supporting documentation pertaining to the following information:

16

> In a list format, provide the amount of any capital contributions to the entity including initial capital at startup and any cash provided to the entity for the life of the partnership for any reason (Ex: cash for capital improvements or repairs, to alleviate an overdraft balance or provide cash reserves for expenses). The contribution will be presumed to not have occurred unless proper and complete supporting documentation for the contribution is provided to HMV.
>
> There are transactions for which the purpose is not readily apparent, and withdrawals and debit memos with no description. Provide an explanation for the transactions and cash withdrawals listed in Exhibit A.

The liquidators indicated that the "transaction will be deemed a draw from the capital account of the respective partner unless clear and complete supporting documentation of the substantive reason for the transaction is provided." The liquidators requested a "prompt and complete response" from both parties. The record reflects that on August 24, 2021, per Brooks' request, the liquidators sent Brooks' accountant, the "letter with our inquiries regarding bank transactions." On October 14, 2021, the liquidators sent the August 4, 2021, letter to Brooks' accountant again.

On November 23, 2021, Brooks' accountant, Jerry Kutz ("Kutz"), sent explanations for particular inquiries regarding the information requested by the liquidators. On November 30, 2021, the liquidators informed Kutz that they would need supporting documentation for any explanations and that "unless these can be supported with good evidence, then each partner is responsible for the reimbursement to the partnership." Thereafter, on February 9, 2022, March 29, 2022, and April 26, 2022, the liquidators informed both parties that their report would be forthcoming. On May 20, 2022, the liquidators informed both parties that their report was finalized and would be submitted to the trial court on May 23, 2022.

On May 31, Kutz informed the liquidators there were supporting documents for the "flagged expenses" in the report. That same day, the liquidators informed Kutz that the report had already been submitted to the trial court. On June 28, 2022, the liquidators sent a letter to the court providing a detailed explanation of its communication with both parties. The liquidators indicated that even after they informed Kutz that they would need supporting documentation, they never received further communication regarding Brooks' expenses. The liquidators then noted that:

> Only after submitting our report did we start receiving increased communications from Mr. Kutz that he had support for the transactions. We informed Mr. Kutz that we had instructed the members to provide support and it was never provided, so we submitted our findings. We also informed Mr. Kutz that if he has additional information that would substantiate personal expenses by Mr. Brooks, that it should be provided to the Court and that we are more than willing to update our findings if support is available. Still, to date, no such support has been provided, even after numerous requests to provide.

After a review of the record, this Court is again inclined to agree with the trial court's findings. The record reflects multiple instances in which the liquidators requested supporting documentation from Brooks to prepare their report. Given that the report was not finalized until May 2022, Brooks had ample time to provide the liquidators with any needed documents before the report was submitted. Although no specified deadline existed in this matter by which parties were required to submit documentation, it is clear that the liquidators reasonably requested the parties to submit documentation in a timely manner and before the report was submitted to the trial court.

However, because this Court has determined that the liquidators' report should be amended to reflect a change in calculation of "flagged expenses" attributed to Brooks under La. R.S. 12:1327, sanctions regarding

18

this matter should be amended with respect to that portion only. The other portion of the award should be affirmed as there is no clear error in the trial court's ruling on the issue.

**Attorney Fees**

In addition to Brooks' assignment of errors, Bullock argues that this Court should award him additional costs and attorney fees incurred for this appeal in the amount of $5,000. Bullock maintains that an inordinate amount of time has been spent litigating this matter and that Brooks has not presented any assignments of error warranting reversal; therefore, this Court, under La. C. C. P. art. 2164, should award damages, including attorney fees.

The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable. La. C.C.P. art. 2164. This provision is penal in nature and is to be strictly construed. *Neal Through Henshaw v. Cash*, 54,579 (La. App. 2 Cir. 6/29/22), 343 So. 3d 324.

Damages for frivolous appeal are allowed only when it is obvious that the appeal was taken solely for delay, that the appeal fails to raise a serious legal question, or that counsel is not sincere in the view of the law he advocates, even though the court is of the opinion that such view is not meritorious. *Id.*; *Fuller v. Pittard* 55,336 (La. App. 2 Cir. 11/15/23), 374 So. 3d 345. The award of damages and attorney fees for a frivolous appeal are utilized to curtail the filing of appeals that are intended to delay litigation, harass another party, or those that have no reasonable basis in fact or law.

*Fuller v. Pittard*, *supra*. Appeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be allowed. *Id.*

Given that this Court has determined that a portion of Brooks' assignments of error on appeal have merit, namely that the liquidators' report should have removed "flagged expenses" attributed to him from prior to 2018, we cannot say this appeal is frivolous. Therefore, we deny Bullock's request for costs and attorney fees.

## CONCLUSION

For the reasons set forth herein, we affirm the trial court's judgment regarding sanctions for the motion to rescind the sale of the property; the opposition regarding the 2014 lease cancellation; and the motion to strike the liquidators' report specifically regarding the filing of additional documents; but reverse and remand sanctions regarding Brooks' motion to strike the liquidators' report related to his allegation that the report was improper with respect to certain "flagged expenses." Moreover, we reverse and remand this matter to reflect changes regarding the distribution of funds solely with respect to any "flagged expenses" attributed to Brooks, not in accordance with La. R.S. 12:1328(C). Accordingly, costs of this appeal are to be split between both parties.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS.**